# U.S. COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 25-2554

WINFIELD SCOTT TOWER URBAN RENEWAL LP,
Appellant

v.

LORISSA LUCIANI; ANGELA GOODE; NEW JERSEY DEPARTMENT OF COMMUNITY
AFFAIRS DIVISION OF HOUSING AND COMMUNITY RESOURCES

_____

Appeal from U.S. District Court, D.N.J.
Judge Michael A. Shipp, No. 3:23-cv-00133

Before: PORTER, MATEY, and AMBRO, *Circuit Judges*
Submitted Under Third Circuit L.A.R. 34.1(a) on Jun. 2, 2026
Decided Aug. 11, 2026

_____

NONPRECEDENTIAL OPINION[*]

MATEY, *Circuit Judge*. Plaintiff Winfield Scott Tower Urban Renewal LP ("Win-

field") is a limited partnership that owned an apartment complex. To finance its 1998 pur-

chase of the tower, Winfield took out a $1.68 million mortgage loan from the New Jersey

Department of Community Affairs ("NJDCA"). In its mortgage agreement with NJDCA,

Winfield promised not to sell the property without NJDCA's "prior written consent." App.

61.

In 2021, Winfield sought to sell the property for $6.2 million to Magill Tower Urban

Renewal LLC ("Magill"). By then, Winfield's mortgage balance had ballooned by over a

_____

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

million dollars due to accrued interest on the mortgage's unpaid principal.[1] Even so, Magill was willing to assume Winfield's mortgage as part of its purchase of the property. But NJDCA officials refused to approve the sale until Winfield agreed to make a payment of $692,393 on the mortgage out of the sale proceeds. Winfield reluctantly made that payment.

After closing, Winfield brought this suit, including a Section 1983 due process claim against the NJDCA officials who sought that payment.[2] Winfield's complaint alleges that although its initial agreement "did not provide for NJDCA to take such a position," App. 131, the officials demanded the payment "simply because they did not want [Winfield] to make a profit on the sale of its property," App. 129. According to Winfield, there is "simply no other explanation" for this demand other than that the officials "wanted to stick it to the Caucasian Jewish businessman [who is Winfield's principal] for no other reason than his race and/or religion." App. 132.

The District Court dismissed Winfield's Section 1983 claim with prejudice. The court noted that Winfield's complaint lacked any factual allegations that the NJDCA officials "made any statements or conducted themselves in a way to allow the Court to infer [the alleged] racial discrimination." App. 11. Since Winfield's due-process claim was supported only by "conclusory allegations" that the officials must have discriminated against

---

[1] At the closing of the sale to Magill, the mortgage's outstanding balance amounted to around $2.86 million: $1.68 million from the principal, and about $1.18 million in accrued interest.

[2] Winfield originally sought to press this claim, as well as a contract claim, against NJDCA. But citing Eleventh Amendment immunity, the District Court dismissed both claims against NJDCA. On appeal, Winfield does not ask us to revisit these decisions.

it based on its principal's background, dismissal was proper. App. 11. We agree.[3] Winfield's allegations are no more than rank speculation and "merely alleging an improper motive is insufficient," no matter if "the motive is unrelated to the merits of the underlying decision." *Chainey v. Street*, 523 F.3d 200, 220 (3d Cir. 2008). Demanding a partial mortgage payment in exchange for forgoing a contractual right to veto a property sale can hardly be said to "shock the conscience." *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285–86 (3d Cir. 2004) (citation omitted).

Nor does Winfield's mortgage agreement with NJDCA create some constitutionally protected interest. *See Linan-Faye Constr. Co., Inc. v. Hous. Auth. of Camden*, 49 F.3d 915, 932 (3d Cir. 1995) (discussing limited causes of action for public contracts involving "welfare benefits" and "social security benefits"). As a result, Winfield's assertion that the NJDCA officials acted outside the agreement's metes and bounds by demanding an additional mortgage payment at closing alleges no invasion of some protected interest under our caselaw.

Finally, "to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available," *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000), and Winfield fails to explain why a state breach-of-contract action is inadequate. *See Ramsey v. Bd. of Educ. of Whitley Cnty.*, 844 F.2d 1268, 1273 (6th Cir. 1988)

---

[3] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. "We exercise plenary review of the District Court's dismissal," *Phila. Taxi Ass'n, Inc. v. Uber Techs., Inc.*, 886 F.3d 332, 338 (3d Cir. 2018), and "may affirm on any basis supported by the record," *TD Bank N.A. v. Hill*, 928 F.3d 259, 270 (3d Cir. 2019).

(explaining that a plaintiff may not assert a due process claim under Section 1983 "when the deprivation is a simple breach of contract and there is [an] adequate state breach of contract action available as a remedy"); *Ind. Land Co., LLC v. City of Greenwood*, 378 F.3d 705, 710 (7th Cir. 2004) ("All states provide judicial remedies for breach of contract and these remedies will almost always provide all the process that is constitutionally due.").

\* \* \*

For these reasons, we will AFFIRM the District Court's dismissal of Winfield's Section 1983 due process claim with prejudice.